AO (Rev. 5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

UNITED STATES OF AMERICA

vs.

PRINCE TOBURAS JERMAINE ROLLE

**CRIMINAL COMPLAINT**

CASE NUMBER: 6:08-mj-1006

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. Beginning on or about October 11, 2007, and continuing through on or about November 8, 2007, in Orange County, Florida County, in the Middle District of Florida, the defendant did conspire to distribute and possess with intent to distribute 5 grams or more of cocaine base, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(B)(iii). I further state that I am a Special Agent with the Drug Enforcement Administration, and that this Complaint is based on the following facts:

**SEE ATTACHED AFFIDAVIT**

Continued on the attached sheet and made a part hereof:  ☒ Yes   ☐ No

Signature of Complainant
Dominick D. Braccio III
Special Agent
Drug Enforcement Administration

Sworn to before me and subscribed in my presence,

January 7, 2008                          at          Orlando, Florida

KARLA R. SPAULDING
United States Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

N:\_Criminal Cases\Rolle, Prince_2007R02503_EJBV_complaint_package.wpd

STATE OF FLORIDA                    CASE NO.  6:08-mj-1006

COUNTY OF ORANGE


## AFFIDAVIT

The undersigned Dominick D Braccio III, being duly sworn, hereby deposes and says:

1.     I am a special agent (SA) with the United States Drug Enforcement Administration (DEA) assigned to the Orlando District Office. I have been a special agent since January 2006. I have completed DEA basic training at the DEA Academy in Quantico, Virginia, and numerous other law enforcement training courses. During my employment with the DEA, I have received specialized training and have gained experience in the investigation of criminal drug trafficking, including cocaine trafficking. I have been trained in the methods that drug traffickers use to distribute controlled substances and I am familiar with the means by which drug traffickers manage, transport, and conceal the proceeds of their drug trafficking activities. I have participated in seizures of controlled substances and the arrests of drug traffickers. I have debriefed cooperating individuals and have conducted other means of investigations. Prior to my employment with DEA, I was a police officer with the Charleston, South Carolina Police Department for approximately a year and a half. I attended the South Carolina Criminal Justice Academy ten week police training program and also several specialized training classes from the Charleston Police Department.

I also have a bachelor's degree in Criminal Justice from The Citadel: The Military College of South Carolina.

## BASIS FOR PROBABLE CAUSE FOR THE ARREST OF PRINCE ROLLE

2.      This affidavit is based upon knowledge that your affiant has acquired during an investigation of drug trafficking activities committed by persons in the Middle District of Florida.  This affidavit is based upon your affiant's personal knowledge, training and experience as a law enforcement officer, information that he received from other law enforcement officers and agents, and information received from other investigative means to include surveillance and record searches.  The statements contained in this affidavit are based in part on information and official reports of Special Agents of the DEA and other members of other federal, state, and local law enforcement agencies, as well as information provided by confidential sources.  At the inception of this investigation in October 2007, law enforcement officers gathered information from a confidential source (CS) who provided information regarding the targets of the investigation.  Law enforcement officers corroborated the CS's information through law enforcement databases and other methods as further described below and developed additional information about the *modus operandi* of Prince ROLLE in his drug trafficking activities.  From personal participation in this investigation, reports received from Special Agents of the DEA, and also from records, documents and other evidence obtained as a result of this investigation, your affiant is familiar with the circumstances and offenses described in this

2

affidavit and the information has been reviewed and determined to be reliable. Since this affidavit is being submitted for the limited purpose of securing authorization for the arrest of Prince ROLLE, your affiant has not included each and every fact known concerning this investigation. Your affiant has set forth, however, the facts believed necessary to establish the foundation for the arrest of Prince ROLLE.

3.      Beginning in October of 2007, a DEA Confidential Source (CS) provided information to the DEA Orlando (Florida) District Office regarding Prince ROLLE. The CS identified ROLLE as a distributor of ounce quantities of cocaine and cocaine base in the Orlando, Florida area. The CS has proven to be a reliable source of information, has provided the Orlando District Office with information that has been corroborated and has provided information and services in several investigations which have led to the arrests of suspects and seizures of controlled substances, including cocaine. The CS has a criminal history for driving without a license and is currently cooperating with law enforcement officers for financial gain.

4.      The CS told agents that he met ROLLE and Daphne ZIDOR, Prince ROLLE's mother, in early October 2007 and that he was with ROLLE at 5614 Partridge Drive, Orlando, Florida, on October 11, 2007. Agents determined that 5614 Partridge Drive was the residence of ZIDOR and that ROLLE also used the residence and stayed there at times. The CS said that on October 11, 2007, he saw approximately twelve ounces of cocaine hydrochloride on the kitchen table of the residence. The CS said he also observed a Tec-9 automatic weapon

3

that was hidden by ROLLE under a chair in the living room of the residence. ROLLE was positively identified by the CS through the use of ROLLE's Florida driver's license photograph.

5.     On October 18, 2007, agents from the DEA Orlando District Office drove by 5614 Partridge Drive, Orlando, Florida with the CS. Because ROLLE's vehicle was spotted at the residence, agents decided to have the CS try to make contact with ROLLE. The CS got out of the agents' vehicle and knocked on the front door of the residence, and ROLLE opened the door and let the CS in. The CS then entered the residence and remained inside for several minutes prior to returning to the agent's vehicle. The CS said that when he went inside, he saw ROLLE in the process of converting approximately four ounces of cocaine hydrochloride to cocaine base ("crack" cocaine) using the kitchen of the residence and several kitchen items. The CS also said that ROLLE was carrying a semi-automatic handgun in his waistband at the time. The CS also observed another unknown black male who was assisting with the process of converting the cocaine hydrochloride to cocaine base, and the CS told agents that this unknown individual also appeared to be carrying a firearm in his waistband underneath his shirt.

6.     On October 26, 2007, following telephone conversations between the CS and ROLLE to set up the deal, agents made a controlled purchase through the CS of approximately one ounce of cocaine base from ROLLE and ZIDOR. After the CS telephoned ROLLE and asked to purchase one ounce of cocaine base, ROLLE agreed and asked the CS to meet with him at 5614

4

Partridge Drive, Orlando, Florida to conduct the transaction. The CS also contacted ZIDOR, who knew of ROLLE's drug trafficking activities at the residence. ZIDOR also instructed the CS to meet with her at the residence. Following the telephone conversations, the CS was equipped with an audio transmitting device (body wire) and $1,000 cash to be used for the purchase. Agents searched the CS prior to the transaction and did not find any contraband. Special Agent Jerald Lucas then drove the CS to the residence while other agents conducted surveillance. Agents observed ZIDOR arrive at the residence shortly after the CS and SA Lucas. The CS waited for a short period of time in front of the residence with ZIDOR inside of her vehicle prior to the arrival of ROLLE. While they were inside the vehicle, the CS stated to ZIDOR that he was waiting for ROLLE to arrive so that ROLLE could sell the CS one ounce of cocaine base. ZIDOR told the CS that she needed to pick up one kilogram of cocaine in Miami, Florida, for $22,000.00. ZIDOR then contacted ROLLE to let him know that the CS was waiting for him. After speaking with ROLLE, ZIDOR also asked the CS if the CS could give her some money for her role in negotiating the price of the cocaine base with ROLLE. The CS stated to ZIDOR that he would try to give her some money at a later time.

7.      ROLLE eventually arrived in a vehicle that parked in the driveway and was driven by the same unknown black male who the CS saw at the residence on October 18, 2007. The CS, ROLLE, and the unknown individual entered the residence. The CS said that ROLLE removed approximately two ounces of cocaine hydrochloride from his pants pocket and proceeded to convert

the cocaine hydrochloride to cocaine base using the kitchen of the residence. The CS said that the unknown individual remained in the kitchen the majority of the time that ROLLE was "cooking" (street term used to describe the conversion of cocaine hydrochloride to cocaine base) the cocaine. According to the CS, upon completion of the "cooking," ROLLE told the CS that the price for one ounce of cocaine base was $700.00, and the CS gave ROLLE $700.00 cash in exchange for approximately one ounce of cocaine base. With the transaction complete, the CS left the residence and returned to the vehicle of SA Lucas. SA Lucas and the CS left the area and met with the undersigned at a neutral location. I immediately took possession of the cocaine base from the CS and conducted field tests of the substances obtained, which proved presumptive positive for the presence of cocaine. The cocaine base weighed more than 20 grams.

8.     On November 2, 2007, agents attempted to initiate a second controlled purchase of approximately six ounces of cocaine base by the CS from ROLLE and ZIDOR. The CS telephoned ROLLE and asked to purchase six ounces of cocaine base. ROLLE agreed and asked the CS to meet with him at 5614 Partridge Drive, Orlando, Florida to conduct the transaction. The CS also contacted ZIDOR, who also instructed the CS to meet with her at the residence. Following the telephone conversation, the CS was equipped with an audio transmitting device (body wire) and $1,000 cash to be used for the purchase. The CS was searched prior to the transaction, with no contraband located. The CS then drove to the residence while other agents conducted surveillance. Agents

6

watched the CS meet with ZIDOR in front of the residence. The CS paid ZIDOR $100.00 for her role in the first transaction as she had requested. ZIDOR then contacted ROLLE to let him know that the CS was waiting for him at the residence. ZIDOR told the CS that a friend of ROLLE's saw several undercover police vehicles in a nearby area and that ROLLE was going to take a look at the vehicles prior to arriving at the residence. The CS was then instructed by agents who were in contact with the CS by cellular telephone to leave the area and postpone the transaction for another time.

9.    On November 4, 2007, the CS contacted agents and told them that ZIDOR asked him to drive her to Miami, Florida, on the following day to negotiate the purchase of one kilogram of cocaine. On November 5, 2007, agents met with the CS, and the CS and the CS's vehicle were searched with no contraband located. Agents then followed the CS from the meeting place to ZIDOR's where the CS picked up ZIDOR to take her to South Florida. Agents conducting surveillance first observed the CS and ZIDOR travel to 4940 Old Winter Garden Road, Orlando, Florida. Agents then watched ZIDOR get out of the vehicle and enter Suite A, Sunshine Upholstery. The CS contacted agents and said that ZIDOR advised the CS that she needed to meet with ROLLE'S boss. After ZIDOR returned to the vehicle, agents followed ZIDOR and the CS to 14122 NW 27th Avenue, Opa Locka, Florida. Agents watched ZIDOR enter a business at that location. The CS later told agents that ZIDOR advised the CS that she needed to drop off $22,000.00 at that location for cocaine that would be delivered to her and ROLLE at a later time.

10.     On November 8, 2007, agents attempted to place ROLLE under arrest based on probable cause for the above mentioned events and two outstanding State of Florida arrest warrants. Agents followed ROLLE, ZIDOR, and an unknown child from the residence of ZIDOR to the parking lot of an appliance store in Orlando, Florida. After arriving in the parking lot, agents used emergency lights and sirens and got out of their vehicles wearing police insignia in an attempt to conduct a vehicle block/traffic stop of the vehicle ROLLE was driving.  Upon seeing agents with the emergency lights and sirens signaling a traffic stop, ROLLE, with his vehicle still occupied by ZIDOR and the child, proceeded to drive through several front lots and driveways in order to flee from the agents and make it to a thoroughfare. Agents followed ROLLE initially as he drove at a high rate of speed through several red lights.  The attempted traffic stop was terminated by agents when ROLLE drove at a high rate of speed in the opposing lane of traffic, forcing oncoming traffic to swerve off of the road.

11.     On the same day, agents searched ROLLE and ZIDOR's residence and found a digital scale, 9mm bullets and .22 caliber bullets.

8

12.     Based on the foregoing, your affiant submits that there is probable

cause to believe that Prince ROLLE is guilty of conspiracy to distribute and

possess with intent to distribute 5 grams or more of a mixture and substance

containing a detectable amount of cocaine base, in violation of Title 21, United

States Code, Sections 846, 841(a)(1) and 841(b)(1)(B)(iii).

Dominick D. Braccio III
Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me
this _7th_ day of January, 2008.

KARLA R. SPAULDING
United States Magistrate Judge