UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
_ORLANDO_DIVISION

UNITED STATES OF AMERICA

v.   Case No. 6:09-cr-103-Orl-28DAB

PRINCE TOBURAS JERMAINE ROLLE

**UNITED STATES' SENTENCING MEMORANDUM
REGARDING APPLICABILITY OF THE FAIR SENTENCING ACT OF 2010**

The United States of America files this sentencing memorandum in support of its argument that the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372 (Aug. 3, 2010) ("FSA"), does not apply to offenses, like the defendant's, committed before the FSA was enacted.

The FSA amended 21 U.S.C. § 841(b)(1) to increase the minimum quantities of cocaine base, commonly known as "crack" cocaine, that an offense must involve before the enhanced penalties set forth in the statute must be imposed. Specifically, the FSA increased from 50 grams to 280 grams the quantity of cocaine base required to trigger the 10-year minimum sentence of section 841(b)(1)(A)(iii) and increased from 5 grams to 28 grams the quantity of cocaine base required to trigger the 5-year minimum sentence of section 841(b)(1)(B)(iii).[1]

---

[1] These threshold amounts also trigger (1) minimum terms of supervised release, (2) increased maximum prison terms, and (3) increased maximum fines. For the sake of brevity, the United States refers here only to the increased minimum terms of imprisonment, but the principles set forth in this memorandum apply with equal force to the statute's other increased penalties.

In this case, the defendant pleaded guilty to Counts One and Two of the Indictment on December 11, 2009. See Docs. 31, 34 and 40. The offenses charged in Counts One and Two both involved 19.7 grams of cocaine base. Pre-Sentence Investigation Report ("PSR") ¶ 19. Accordingly, under the penalty statute in effect at the time of the offenses, the defendant is subject to a 5-year minimum term of imprisonment on Counts One and Two.

For the reasons stated below, the amended statute, that is, the FSA, does not apply in this case. Governing law and case precedent require that the defendant be sentenced pursuant to the penalty statute that was in effect when he committed the offenses of conviction, the last of which occurred on November 8, 2007, almost three years before the FSA was enacted. Therefore, even though he Guidelines call for a sentence that is higher than these mandatory minimums, and the United States is calling for a Guidelines sentence in the range of 92-115 months, the Court should sentence the defendant to no less than the mandatory terms of five years on both Counts One and Two.

**I.    ON OCTOBER 1, 2010, THE ELEVENTH CIRCUIT DETERMINED THAT THE AMENDED STATUTE DOES NOT APPLY TO AN OFFENSE THAT OCCURRED BEFORE AUGUST 3, 2010**

In October 2010, the Eleventh Circuit issued its opinion in United States v. Gomes, 621 F.3d 1343 (11th Cir. 2010). In Gomes, the court held that, "because the FSA took effect in August 2010, after appellant committed his crimes, 1 U.S.C. § 109 bars the Act from affecting his punishment." Id. at 1346. Twice since then, the Eleventh Circuit has reaffirmed Gomes's holding in unpublished opinions. United States v. Bradley, No. 10-11639 (11th Cir. Jan. 20, 2011) ("In our recent decision [Gomes], we

made clear that the amendments in the Fair Sentencing Act do not apply to crimes committed before the FSA was enacted in August 2010. . . . Because Bradley's crime was committed before the FSA became law, the amendments in that act do not apply to him."); United States v. Mickens, 2011 WL 49843 (11th Cir. Jan. 7, 2011) ("Thus, we have held that Section 109 bars the application of the FSA to defendant's sentence when the defendant committed his crime before the August 2010 effective date of the FSA.") (citing Gomes, 621 F.3d at 1346).

The Eleventh Circuit's holding in Gomes controls this case and confirms that the defendant is subject to the pre-FSA penalty statute because he, too, committed his crimes before August 3, 2010. Stated differently, because the FSA does not apply retroactively, the defendant is subject to the statutory penalties in place when he committed the offenses of conviction.

## II.  HISTORY OF THE FAIR SENTENCING ACT – SENATE BILL 1789

As enacted in 1986, 21 U.S.C. § 841(b)(1) provided for a 100:1 ratio between the minimum amounts of powder cocaine and the minimum amounts of cocaine base that would trigger the mandatory minimum sentences. For powder cocaine, 500 grams triggered the 5-year minimum sentence, and 5 kilograms triggered the 10-year minimum sentence. For cocaine base, 5 grams triggered the 5-year minimum sentence, and 50 grams triggered the 10-year minimum sentence. Senate Bill 1789 was introduced on October 15, 2009, proposing to establish a 1:1 ratio, by which the amounts of cocaine base required to trigger the 5-year and 10-year minimum sentences would be same as

the amounts of cocaine powder required: 500 grams and 5 kilograms, respectively. Congress, however, rejected that proposal.

Instead, the version of Senate Bill 1789 passed by Congress came about as part of "a bipartisan compromise that was negotiated and drafted by Democratic and Republican members of the Senate Judiciary Committee." 156 Cong. Rec. H6197 (Rep. Scott); 156 Cong. Rec. S1680-81 (Sen. Durbin). The amended S. 1789 provided that 21 U.S.C. § 841(b)(1) would be amended as follows:

> (1) in subparagraph (A)(iii), by striking "50 grams" and inserting "280 grams"; and (2) in subparagraph (B)(iii), by striking "5 grams" and inserting "28 grams".

S. 1789 at § 2(a). With this amendment, the statute establishes approximately (actually slightly less than) an 18:1 ratio between the amount of powder cocaine and the amount of cocaine base necessary to trigger the enhanced penalties. The amended S. 1789 passed the Senate by unanimous consent on March 17, 2010. 156 Cong. Rec. H6197, H6203 (noting that the bill "has overwhelming bipartisan support"). The bill passed the House on July 28, 2010, and was signed by the President on August 3, 2010.

In adopting the 18:1 ratio, Congress "looked at the data on who was indicted and who has been sentenced both by race as well as by the amount of cocaine that they possessed" and considered the views of the Sentencing Commission and many other organizations. See, e.g., 156 Cong. Rec. H6198 (Rep. Sensenbrenner); 156 Cong. Rec. S1681 (Sen. Durbin). Congress reached this result after holding three hearings in 2009 on bills addressing crack cocaine, as well as innumerable hearings on crack cocaine over the last 20 years. See, e.g., 155 Cong. Rec. D469, D610, D837.

4

As the comments on S. 1789 indicate, Congress adopted the 18:1 ratio as a "very fair compromise" between those who wanted to retain the 100:1 ratio and those who wanted a 1:1 ratio. 156 Cong. Rec. H6198 (Rep. Sensenbrenner); see 156 Cong. Rec. S1680-83 (Sen. Durbin); 156 Cong. Rec. H6196-6204 (various Reps.); 155 Cong. Rec. S10490-93 (various Senators). It also reflected a judgment that crack cocaine remains a more dangerous drug than powder cocaine. As one supporter of the bill explained:

> The concern about crack cocaine was, and in my view remains, a valid one. According to the National Institute on Drug Abuse, crack causes faster and shorter highs than powder, which results in more frequent use. Crack cocaine is also associated with gang activities and violence, as evidenced by U.S. Sentencing Commission data. There is, in my view, a basis for disparate treatment of those who traffic in crack versus powder.

156 Cong. Rec. H6202 (Rep. Lungren). Setting the level at 28 grams, i.e., one ounce, enabled law enforcement "to reach the wholesale and mid-level traffickers who often trafficked in 1-ounce quantities." Id.

The 18:1 ratio, moreover, was close to, if more lenient than, the 20:1 ratio that had been proposed in 1986, had been called for by the Sentencing Commission in 2002, and had been accepted by numerous courts since 2005. Id.; e.g., Spears v. United States, 129 S. Ct. 840, 844 (2009) (upholding variance to 20:1 ratio based on "two well-reasoned decisions by other courts, which themselves reflected the Sentencing Commission's expert judgment that a 20:1 ratio would be appropriate in a

5

mine-run case"); U.S.S.C., Report to the Congress: Cocaine and Federal Sentencing Policy, xiii, 4, 7-8 (May 2002).[2]

## III. THE PENALTIES SET FORTH IN THE PRIOR LAW APPLY TO OFFENSES OCCURRING BEFORE AUGUST 3, 2010

For crimes committed before the effective date of the FSA, the penalties for 50 grams and 5 grams of crack cocaine set forth in the pre-existing 21 U.S.C. § 841(b)(1) continue to apply under the general "Savings Statute" or "Savings Clause," 1 U.S.C. § 109. The Savings Statute provides, in pertinent part:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the

---

[2] Available at http://www.ussc.gov/r_congress/02crack/2002crackrpt.pdf. After substantial study, the Sentencing Commission called for a 20:1 ratio, with mandatory thresholds of 25 and 250 grams, because crack has a more powerful high, greater addictiveness, and greater association with weapons, violence, and systemic crime, than powder cocaine. See id. at v, 53, 57, 93-94, 100, 102-03. "Smoking crack cocaine produces quicker onset of, shorter-lasting, and more intense effects than snorting powder cocaine," which "result in a greater likelihood that the user will administer the drug more frequently to sustain these shorter 'highs' and develop an addiction." Id. at 19. The Commission found "that differences in the intrinsic harms posed by the two drugs (e.g., addictiveness) should be reflected in different base offense penalties and therefore different quantity-based penalties"; that "differences in other harms that cannot be adequately accounted for by specific sentencing enhancements (e.g., association with certain systemic crime) also should be reflected appropriately in different base offense penalties"; and that a 20:1 ratio "would appropriately reflect those harms that cannot be fully addressed by specific sentencing enhancements." Id. at 92, 107. The Commission also found that a 25-gram threshold "would be more consistent with the goal of targeting mid-level crack cocaine dealers" who traffic in ounce-sized packages, would "more closely reflect[] serious traffickers as described in the legislative history of the 1986 Act[,] and would result in a penalty structure significantly more consistent with the penalty structure of other major drugs of abuse." Id. at ix, 106-07. In its most recent report to Congress, the Commission confirms that current data, information, and analysis "demonstrate[] that the major conclusions of the 2002 Commission Report remain valid." U.S.S.C., Report to the Congress: Cocaine and Federal Sentencing Policy, 5, 11, 14, 30-31, 36, 63-66 (May 2007), available at http://www.ussc.gov/r_congress/cocaine2007.pdf.

6

> repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

Id. Congress enacted this Savings Statute and its predecessors "to abolish the common-law presumption that the repeal of a criminal statute resulted in the abatement of" prosecutions and to avoid abatements "from repeals and re-enactments with different penalties, whether the re-enacted legislation increased or decreased the penalties." Warden v. Marrero, 417 U.S. 653, 660 (1974). "In consequence, the saving clause has been held to bar application of ameliorative criminal sentencing laws repealing harsher ones in force at the time of the commission of an offense." Id. at 661. Thus, in Marrero, the Supreme Court held that, under the Savings Statute, the repeal of a federal drug statute, which provided that certain drug offenders sentenced to mandatory minimum prison terms should be ineligible for parole, did not alter the parole ineligibility of a defendant prosecuted for offenses he had committed while the statute was in effect. Id. at 654, 664; see also Bradley v. United States, 410 U.S. 605 (1973) (narcotic offenses committed prior to effective date of the federal drug statute involved in Marrero were punishable according to the law in force at time of the offense notwithstanding that sentencing occurred after effective date of the statute).

The Savings Statute is not limited to full repeals, but also applies to amendments. In United States v. Mayfield, 999 F.2d 1497, 1499 (11th Cir. 1993), the Eleventh Circuit considered whether the defendant had been properly convicted under a version of the bank bribery statute, 18 U.S.C. § 215, that was in effect when he committed the offenses but that had been amended before he was indicted. The amended version added the element of "corrupt intent" to the offense. Id. The

7

defendant argued that his conviction should be reversed because the element of "corrupt intent" was neither charged in the indictment nor proven at trial. See id.

The Eleventh Circuit rejected this argument, holding that the amended version of the law did not apply retroactively because it did not contain "any language manifesting such retroactive intent on the part of Congress." Id. at 1500. "'[R]etroactivity is not favored in the law. Thus, congressional enactments . . . will not be construed to have retroactive effect unless their language requires this result.'" Id. (quoting Bowen v. Georgetown Univ. Hospital, 488 U.S. 204, 208 (1988)). Because the amended statute did not contain any language addressing the effect of the repeal of the prior version, the Savings Statute mandated that the prior version should be applied to offenses that occurred before the effective date of the amended statute. See id. at 1501. In reaching this conclusion, the court quoted with approval the Fifth Circuit's analysis in a prior case:

> [P]enalties accruing while a statute was in force may be prosecuted after its repeal, unless there is an express provision to the contrary in the repealing statute. "We are aware of no reason, rule, or decision that requires a different conclusion as to criminal prosecution under the authority of section 109 for acts occurring prior to the repeal of the former statute where neither the former statute nor the repealing statute contain[s] [an] express provision to the contrary." Therefore, the savings clause allows prosecution under the old statute, and the date on which the indictment was returned is not relevant to this inquiry.

Id. (quoting United States v. Brown, 429 F.2d 566, 568 (5th Cir. 1970) (quoting Bowen v. United States, 171 F.2d 533, 534 (5th Cir. 1948))); see also United States v. Avila-Anguiano, 609 F.3d 1046, 1049-51 (9th Cir. 2010) (applying Savings Statute and holding defendant subject to statutory minimum penalty prescribed by 18 U.S.C. § 924(c)(1) at time he committed his offense, rather than lesser penalty in effect at time of sentencing); United States v. Klump, 536 F.3d 113, 120-21 (2d Cir. 2008) (same);

8

United States v. Jacobs, 919 F.2d 10, 11-13 (3d Cir. 1990) (reversing district court's grant of probation to drug defendant under amended statute, because "the saving statute mandates that probation eligibility be determined according to the statutes in effect at the time of the commission of the offense"); United States v. Rojas-Colombo, 462 F.2d 1091, 1091-92 (5th Cir. 1972) (upholding, pursuant to Savings Statute, 20-year sentence for offense whose maximum sentence was reduced from 20 years to 15 years before defendant's sentencing).

In the present case, because the FSA does not "so expressly provide," its prospective amendment of the mandatory minimum provisions does not apply retroactively to crimes committed before its effective date. 1 U.S.C. § 109; see Jacobs, 919 F.2d at 13 (declining to consider argument that Congress would not have intended the savings clause to preserve the penalty, because "§ 109 expressly provides that Congress will indicate exceptions to the effect of the saving statute in the repealing statute," and no such express exception had been provided) (emphasis the Court's)); United States v. Caldwell, 463 F.2d 590, 594 (3d Cir. 1972) (section 109 has "the effect of preserving the penalties prescribed by [an earlier drug statute], since Congress did not otherwise provide").

Congress's choice not to make its amendment in the FSA retroactive must be respected. The defendant in Marrero argued that Congress's new statute represented a new, ameliorative approach and that denying relief "frustrates the current congressional goal of rehabilitating narcotics offenders." 417 U.S. at 664. The Supreme Court stated that the defendant's "argument has force, but it is addressed to the wrong governmental branch. Punishment for federal crimes is a matter for Congress," and Congress's

9

decision not to make the amelioration retroactive "trespassed no constitutional limits."
Id. As the Third Circuit has stated,

> "[I]t is Congress that has drawn the line. If penalties are to differ because of an arbitrarily selected date, it seems fairer that the severity of the penalty depend upon the voluntary act of a defendant in choosing the date of his criminal conduct than upon the date of sentencing, which could vary with the fortuities of criminal proceedings."

Caldwell, 463 F.2d at 594.

As discussed above, the Eleventh Circuit has held that the FSA does not apply retroactively to crimes committed before its effective date. See United States v. Gomes, 621 F.3d 1343, 1346 (11th Cir. 2010); United States v. Bradley, No. 10-11639 (11th Cir. Jan. 20, 2011); United States v. Mickens, 2011 WL 48943 (11th Cir. Jan. 7, 2011). In the few months since the effective date of the FSA, a number of other courts have addressed the applicability of the amended statute to crimes committed before that date. Every circuit court that has considered this issue has determined that the amended statute does not apply retroactively. On September 20, 2010, the Sixth Circuit took up the matter in United States v. Carradine, 621 F.3d 575 (6th Cir. 2010), in which the defendant was accountable for 19 grams of crack cocaine, making him subject to the 5-year mandatory minimum sentence under the prior statute but not under the amended statute. The court considered supplemental briefs from both parties after granting a motion by the defendant to file a supplemental brief arguing that he was entitled to the benefit of the amended statute. See id.

The court first noted the applicability of the Savings Statute, which "requires [the court] to apply the penalties in place <u>at the time the crime was committed</u>, unless the new enactment expressly provides for its own retroactive application." Id. (emphasis

10

added). The court then succinctly stated why the amended statute did not apply in the case before it:

> The new law at issue here, the Fair Sentencing Act of 2010, contains no express statement that it is retroactive nor can we infer any such express intent from its plain language. Consequently, we must apply the penalty provision in place at the time [the defendant] committed the crime in question. We affirm the district court's imposition of the 60-month mandatory minimum sentence.

Id. at *5; see also United States v. Ross, 464 F.2d 376, 378 (2d Cir. 1972) (holding that Savings Statute defeated defendant's claim that he could escape the mandatory minimum sentence under statute repealed after the commission of his crime). Likewise, the defendant in the present case is subject to the mandatory 5-year sentences on Counts One and Two called for by the statutes in effect at the time he committed the offenses charged in the Indictment.

Other courts, including two district courts in the Middle District of Florida, have come to the same conclusion as the Eleventh Circuit did in Gomes and Mickens, and as the Sixth Circuit did in Carradine. See United States v. Ohaegbu, 2010 WL 3490261, *1 (M.D. Fla. Aug. 31, 2010) (Fawsett, J.) ("Finding no authority or evidence in the text or legislative history of the Fair Sentencing Act of 2010 supporting Petitioner's argument that the Fair Sentencing Act of 2010 applies retroactively, the Court will deny Petitioner's Motion for Reconsideration"); United States v. King, 2010 WL 3490266, *2 (M.D. Fla. Aug. 31, 2010) (Fawsett, J.) ("Finding no authority or evidence in the text or legislative history of the Fair Sentencing Act of 2010 supporting Defendant's argument that the Act applies retroactively, the Court will not reduce Defendant's sentence"); United States v. Mack, 2010 WL 4068518, *3 (M.D. Fla. Oct. 18, 2010) (Steele, J.)

11

("[T]he Fair Sentencing Act of 2010 . . . does not apply because defendant's offenses were committed prior to its enactment") (citing Gomes, 621 F.3d at 1346, 2010 WL 3810872 at *2); United States v. Rivera, 2010 WL 4679901, *1 (M.D. Fla. Nov. 10, 2010) (Steele, J.) ("[T]he Fair Sentencing Act of 2010 is not retroactive."); United States v. Watson, 2010 WL 3272934, *3 n.1 (E.D. Mich. Aug. 12, 2010) ("The amendment does not apply in this case, however, because the offense occurred prior to the new law's enactment and the new statute was not made retroactive"); United States v. Miller, 2010 WL 3119768, *2 n.2 (D. Minn. Aug. 6, 2010) ("While the law is not retroactive, it is indicative of Congress's desire to resolve the sentencing disparities between these two drugs"); Joyner v. United States, 2010 WL 3063282, *1 (E.D.N.C. Aug. 4, 2010) ("In its discretion, the court declines [the defendant's] invitation to revisit his sentence in light of newly enacted 'The Fair Sentencing Act,' S. 1789. Nothing in that legislation hints at retroactivity . . .").

As stated above, the Eleventh Circuit's holding in Gomes is controlling in this case. Several other decisions addressing the retroactivity of the application of the FSA are excerpted below.

### OTHER DECISIONS HOLDING THAT THE FSA IS NOT RETROACTIVE

#### Circuit Courts

- United States v. Diaz, ___ F.3d ___, 2010 WL 5094222, *1 (2d Cir. Dec. 15, 2010) ("In this case, the FSA contains no express statement that it is intended to have retroactive effect nor can we infer such intent from its language. As a result, the FSA cannot be applied to reduce Appellant's sentence because, inter alia, he was convicted and sentenced before the FSA was enacted") (citing United States v. Gomes, 621 F.3d 1343, 1346, (11th Cir. Oct. 1, 2010); United States v. Carradine, 621 F.3d 575, 580 (6th Cir. Sept. 20, 2010)).

- United States v. Reevey, 2010 WL 5078239, *3 (3d Cir. Dec. 14, 2010) ("The FSA does not contain an express statement that [it] is to be applied to crimes committed before the FSA's effective date") (citing United States v. Lewis, 625 F.3d 1224, 1228 (10th Cir. Oct. 29, 2010); United States v. Brewer, 624 F.3d 900, 909 n.7 (8th Cir. Oct. 21, 2010); United States v. Bell, 624 F.3d 803, 814 (7th Cir. Oct. 20, 2010); Gomes, 621 F.3d at 1346; Carradine, 621 F.3d at 580).

- United States v. Nelson, 2010 WL 4676614, *1 (4th Cir. Nov. 18, 2010) ("We reject Nelson's request to remand for resentencing, as the [FSA], which amended the penalty provisions of 21 U.S.C. § 841(b) by increasing the quantities of crack cocaine required to trigger mandatory minimum sentences, does not apply retroactively") (citing Gomes, 621 F.3d at 1346; Carradine, 621 F.3d at 580).

- United States v. Wilson, 2010 WL 4561381, *2 (4th Cir. Nov. 12, 2010) ("[T]he Fair Sentencing Act does not apply retroactively").

- United States v. Hall, 2010 WL 4561363, *3 (9th Cir. Nov. 10, 2010) (The FSA "will not affect Hall's sentence, however, because . . . the new legislation is not retroactive").

- United States v. Lewis, 625 F.3d 1224 (10th Cir. 2010) ("[The Fair Sentencing] Act reduces th[e] crack/powder ratio to 18-1. It is not, however, retroactive and thus does not apply to this case").

- United States v. Glover, 2010 WL 4250060, *2 (2d Cir. Oct. 27, 2010) ("[The defendant] is not entitled to the benefit of the recently enacted Fair Sentencing Act of 2010. The Act contains no express statement that it is intended to have retroactive effect nor can we infer such intent from its language. *See* 1 U.S.C. § 109") (citing United States v. Gomes, 621 F.3d 1343, 1346, 2010 WL 3810872, *2 (11th Cir. Oct. 1, 2010); United States v. Carradine, 621 F.3d 575, 580, 2010 WL 3619799, *4-*5 (6th Cir. Sept. 20, 2010)).

- United States v. Brewer, 624 F.3d 900 (8th Cir. 2010) ("[T]he Fair Sentencing Act contains no express statement that it is retroactive, and thus the 'general savings statute,' 1 U.S.C. § 109, requires us to apply the penalties in place at the time the crime was committed") (citing United States v. Brown, 2010 WL 3958760, *1 (8th Cir. Oct.12, 2010); Gomes, 621 F.3d at 1346, 2010 WL 3810872 at *2; Carradine, 621 F.3d at 580, 2010 WL 3619799 at *4-*5).

- United States v. Bell, 624 F.3d 803 (7th Cir. 2010) ("Like our sister circuits that have considered this issue, . . . we conclude that the savings statute operates to bar the retroactive application of the FSA. Bell's arguments to the contrary are novel but ultimately unpersuasive") (citing Gomes, 621 F.3d at 1346, 2010 WL 3810872 at *2; Carradine, 621 F.3d at 580, 2010 WL 3619799 at *4-*5).

13

- United States v. Brown, 2010 WL 3958760, *1 (8th Cir. Oct.12, 2010) ("Section 841 has been amended to raise the threshold for imposition of a 120-month minimum prison sentence, *see* Fair Sentencing Act of 2010, . . . but the amendment was not made retroactive, *see* [Carradine, 621 F.3d at 580, 2010 WL 3619799 at *4-5] . . . . Thus the statutory minimum existing at the time the offense was committed governs").

### District Courts

- United States v. Foster, 2011 WL 62123, *1 (D.S.C. Jan. 7, 2011) ("The FSA does not contain any provision that the law is retroactive. Therefore, the penalty provisions at the time the crime was committed apply").

- United States v. Bagent, 2011 WL 39830, *2 (E.D. La. Jan. 4, 2011) ("The Fair Sentencing Act does not apply retroactively to a criminal conduct that occurred before its enactment").

- United States v. Johnson, 2011 WL 39090, *2 (E.D. La. Jan. 4, 2011) ("The Fair Sentencing Act does not apply retroactively to a criminal conduct that occurred before its enactment").

- United States v. Dickey, ___ F. Supp.2d ___, 2011 WL 49585, *11 (W.D. Pa. Jan. 4, 2011) ("[T]he Fair Sentencing Act of 2010 is determined not to be retroactive and therefore Defendant...shall be sentenced without application of the FSA").

- United States v. Davis, 2011 WL 39094, *2 (E.D. La. Jan. 3, 2011) ("The Fair Sentencing Act does not apply retroactively to a criminal conduct that occurred before its enactment").

- United States v. Patterson, 2010 WL 5480838, *4 (S.D.N.Y. Dec. 30, 2010) ("[T]he Court concludes that the FSA's reduced statutory minimums do not apply...and that the defendants here remain subject to the ten-year mandatory minimum").

- United States v. Crews, ___ F. Supp.2d ___, 2010 WL 5178017, *5 (W.D. Pa. Dec. 20, 2010) (The FSA "will not apply to [Crews] because his offense was committed prior to the date of enactment of the [FSA]. The court under [*United States v. Jacobs*, 919 F.2d 10 (3d Cir. 1990)] must apply the statutory provisions in effect on the date of the offense committed by Crews").

- Thomas v. United States, 2010 WL 5092692, *1 (D. S.C. Dec. 7, 2010) ("Even if the Sentencing Commission modifies the guidelines as a result of the 'Fair Sentencing Act' and makes the guideline modifications retroactive, that will have no effect on the mandatory minimum penalties under the statute.")

- United States v. Tejeda, 2010 WL 4967977, *2 (S.D.N.Y. Dec. 2, 2010) ("[T]he Court is not persuaded that the FSA applies retroactively to offenses committed prior to August 3, 2010").

- United States v. Holmes, 2010 WL 4961657, *4 (E.D. Va. Dec. 1, 2010) ("[T]he Court agrees with the overwhelming weight of authority and holds that the FSA's reduced penalty provisions do not retroactively apply to offenses committed prior to enactment of the FSA, and thus Defendant is subject to the ten-year mandatory minimum sentence"); see also cases cited therein at *2.

- United States v. Simmons, 2010 WL 4922192, *5 (S.D.N.Y. Dec. 1, 2010) (amendments in the Fair Sentencing Act "do not apply retroactively, and for purposes of determining mandatory minimum sentences, the Court must consider the statutory requirements at the time the offense was committed.").

- United States v. Wagoner, 2010 WL 4363429, *1 (D. Minn. Oct. 28, 2010) ("As the Eighth Circuit recently noted, because the Fair Sentencing Act contains no express language that it is retroactive, 'the statutory minimum existing at the time the offense was committed governs.'") (quoting Brown, 2010 WL 3958760 at *1).

- United States v. Butterworth, 2010 WL 4362859, *1 (D. Me. Oct. 27, 2010) ("The overwhelming weight of authority is against applying the Fair Sentencing Act to those already sentenced, let alone those whose sentences are already final. [Brown, 2010 WL 3958760 at *1; Gomes, 621 F.3d at 1346; Carradine, 621 F.3d at 580].
- United States v. Norris, 2010 WL 4339275, *2 (N.D. Ind. Oct. 27, 2010) ("[T]he Seventh Circuit has determined that the FSA does not apply retroactively") (citing Bell, 2010 WL 4103700 at *10).

- United States v. Badley, 2010 WL 4292220, *5 (N.D. Ohio Oct. 22, 2010) ("[The defendant] is not entitled to relief due to the adoption of the Fair Sentencing Act of 2010 as it was not made retroactive and does not address the validity of previously imposed life sentences based on crack cocaine convictions").

- United States v. Millhouse, 2010 WL 4338383, *2 (E.D.N.C. Oct. 22, 2010) ("This court is required to apply the penalty in place at the time the crime is committed, 'unless the new enactment provides for its own retroactive application.' . . . Because there is no indication that the FSA is to apply retroactively, . . . [the defendant's] motion for reduction of sentence is DENIED without prejudice'") (quoting Carradine, 621 F.3d at 580, 2010 WL 3619799 at *4-*5, and citing Bell, 2010 WL 4103700 at *10; Gomes, 621 F.3d at 1346, 2010 WL 3810872 at *2).

- Bingham v. United States, 2010 WL WL 4220219, *3 (C.D. Cal. Oct. 19, 2010) ("While the Ninth Circuit has not ruled on whether the Fair Sentencing Act applies

15

retroactively, each federal court of appeals that has considered the matter has found the Act to not apply retroactively, because there is no express statement of retroactivity contained in the Act. . . . The Court is persuaded by the reasoning of these cases and finds that the Fair Sentencing Act should not be applied retroactively to petitioner") (citing Brown, 2010 WL 3958760 at *1; Gomes, 621 F.3d at 1346, 2010 WL 3810872 at *2; Carradine, 621 F.3d at 580, 2010 WL 3619799 at *4-*5).

- United States v. Hughes, 2010 WL 3982138, *3 (W.D. Wis. Oct. 8, 2010) ("Defendant argues that he is entitled to be resentenced under the Fair Sentencing Act of 2010, but he is not eligible for resentencing under the Act. It is not retroactive, but applies only to crimes committed after August 3, 2010").

- United States v. Magee, 2010 WL 3829349, *1 (E.D. La. Sept. 23, 2010) ("Congress has not expressed clear intent for the Fairness in Sentencing Act [*sic*] of 2010 to apply retroactively. Therefore, [the defendant], who was subject to the mandatory minimum sentence of 10 years imprisonment on Count 1 under the version of § 841(a)(1) that was in force when he committed the offense, is not entitled to a sentence reduction at this time").

## DECISIONS HOLDING THAT THE FSA IS RETROACTIVE

### District Courts

- United States v. Johnson, Case No. 6:08-cr-270-Orl-31KRS (M.D. Fla. Jan. 4, 2011) (Presnell, J.) (unpublished) (district court rejected the Eleventh Circuit's holding regarding the non-retroactivity of the FSA in Gomes on the grounds that such was "clearly dicta, and is therefore not binding authority").

- United States v. English, ___ F.Supp.2d ___, 2010 WL 5397288, * (S.D. Iowa. Dec. 30, 2010) ("the Fair Sentencing Act does apply to Defendant's sentence [imposed after August 3, 2010]).

- United States v. Ross, 2010 WL 5168794, *2 (S.D. Fla. Dec. 17, 2010) (King, J.) (despite recognizing that the FSA was not made retroactive to crimes committed before it took effect and despite the Eleventh Circuit's holding in Gomes, sentencing defendant to less than 5-year mandatory minimum sentence required under prior law).

- United States v. Gillam, 2010 WL 4906283, *7 (W.D. Mich. Dec. 3, 2010) ("[T]he penalty provisions of 21 U.S.C. § 841, as amended by § 2 of the Fair Sentencing Act, are properly applied in sentencing this defendant, who pleaded guilty and is being sentenced after the Act's effective date").

16

- United States v. Douglas, ___ F. Supp.2d ___, 2010 WL 4260221, *6 (D. Me. Oct. 27, 2010)[3] ("[A] defendant not yet sentenced on November 1, 2010, is to be sentenced under the amended Guidelines, and the Fair Sentencing Act's altered mandatory minimums apply to such a defendant as well").

- United States v. Dixson, Case No. 8:08-cr-360-T-33AEP (M.D. Fla. Aug. 25, 2010) (Covington, J.) (unpublished), doc. 32 (Judgment sentencing defendant accountable for 50 or more grams but less than 280 grams of cocaine base to 108 months, below the 10-year mandatory minimum sentence called for by the "old" law; the Court orally ruled at the sentencing hearing that the amended statute applied retroactively).

## IV.  CONCLUSION

For the reasons set forth above, the FSA does not apply retroactively, and does not apply to the applicable statutory penalties in this case. The defendant is properly subject to the minimum mandatory 5-year terms of imprisonment for both Counts One and Two under the version of 21 U.S.C. § 841(b)(1) that was in effect when he committed the offenses, regardless of the recent amendment to that section under the

---

[3] The same district court, on the same date, held that the FSA does not apply to cases in which the defendant was sentenced before the effective date of the Act. See United States v. Butterworth, 2010 WL 4362859, *1 (D. Me. Oct. 27, 2010). Under the Savings Statute, the Eleventh Circuit's decision in Gomes, and the majority view as cited herein, the date of sentencing is of no moment; rather, the dates of the commission of the offenses of conviction control the application of the FSA.

FSA, which would now require a larger quantity of cocaine base to trigger the mandatory minimum sentences.  The United States respectfully requests that this Court sentence the defendant accordingly.

Respectfully submitted,

ROBERT E. O'NEILL
United States Attorney

By: *s/ E. Jackson Boggs Jr.*
    E. Jackson Boggs Jr.
    Assistant United States Attorney
    USA No. 080
    501 West Church Street, Suite 300
    Orlando, Florida  32805
    Telephone:   (407) 648-7500
    Facsimile:    (407) 648-7643
    E-mail:          jackson.boggs@usdoj.gov

U.S. v. Prince Toburas Jermaine Rolle                Case No. 6:09-cr-103-Orl-28DAB

**CERTIFICATE OF SERVICE**

I hereby certify that on February 1, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Michelle P. Smith, Esquire
Law Office of Michelle P. Smith, P.A.
P.O. Box 1788
Orlando, FL 32802
Tel: 407-601-6700
Fax: 888-614-3231
Email: michellepsmith_law@yahoo.com

*s/ E. Jackson Boggs Jr.*
E. Jackson Boggs Jr.
Assistant United States Attorney
USA No. 080
501 West Church Street, Suite 300
Orlando, Florida  32805
Telephone:   (407) 648-7500
Facsimile:    (407) 648-7643
E-mail:         jackson.boggs@usdoj.gov