# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

PRINCE TOBURAS JERMAINE ROLLE,

      Petitioner,

v.
                           Case No.  6:21-cv-473-GAP-RMN
                         (Crim. Case Nos. 6:09-cr-103-GAP-RMN;
                                6:17-cr-301-GAP-GJK)

UNITED STATES OF AMERICA,

      Respondent.

_____/

## ORDER

THIS CAUSE is before the Court on Prince Toburas Jermaine Rolle's Motion to Vacate, Set Aside, or Correct Sentence (Doc. 1), filed under 28 U.S.C. § 2255. Respondent (the Government) filed a Response to the Motion to Vacate (Doc. 7) in compliance with this Court's instruction. Petitioner filed a Reply. (Doc. 10.)

Petitioner asserts two grounds for relief. For the following reasons, the Motion to Vacate is denied.

## I.     PROCEDURAL HISTORY

The procedural history of this action includes: (1) a revocation of Petitioner's supervised release based on new federal criminal offenses, (2) new federal

criminal charges against Petitioner, and (3) separate criminal charges and disciplinary proceedings against Petitioner's retained trial counsel in state and federal court. The following timeline will assist the understanding of Petitioner's claims.

In October 2017, while Petitioner was on supervised release for two federal drug offenses that occurred in 2009,[1] he was charged with and arrested for violation of his conditions of release. The violation was based on federal criminal offenses that occurred in September 2017. (*See generally* 2009 Crim. Case Docs. 96, 97, 101, 102). On December 20, 2017, Petitioner was formally charged with the following federal crimes that occurred in September 2017 — possession with the intent to distribute fentanyl (Count One) and possession of a firearm by a convicted felon (Count Two). *See United States v. Rolle*, Case No. 6:17-cr-00301-GAP-GJK (M.D. Fla.) (Doc. 1).[2]

Although initially represented by a federal public defender on the supervised release violation, Petitioner shortly thereafter retained attorney Nicole Blair Dickerson to represent him. (2009 Crim. Case Doc. 107.)

---

[1] *See United States v. Rolle*, Case No. 6:09-cr-103-GAP-RMN (M.D. Fla.). This case will be referred to as the "2009 criminal case" or cited as "2009 Crim. Case."

[2] *United States v. Rolle*, Case No. 6:17-cr-00301-GAP-GJK (M.D. Fla.) will be referred to as the "2017 criminal case" or cited as "2017 Crim. Case."

Ms. Dickerson also represented Petitioner on the new federal charges. (2017 Crim. Case Doc. 8.)

On October 7, 2017, Ms. Dickerson was arrested for resisting an officer without violence. The charge arose from an altercation with Orlando TAC Unit Officers Stanley Avignon and Landon Thomas during a traffic stop. (Doc. 1-1.)

At a January 5, 2018, status conference in Petitioner's 2017 criminal case, Ms. Dickerson moved to continue the trial to March 2018, and the motion was granted. (2017 Crim. Case Docs. 13, 14.) At the February 13, 2018 status conference, Ms. Dickerson failed to appear. (2017 Crim. Case Doc. 16.) The Court determined that, "[a]bsent defense counsel being present to inform the Court as to the status of this case, this case will remain on the March 2018 trial term." (2017 Crim. Case Doc. 16.) On February 20, 2018, the Court set the trial for a date certain — March 26, 2018 — and directed that any change of plea must be accomplished by March 16, 2018. (2017 Crim. Case Doc. 17.)

On March 8 and 9, 2018, Ms. Dickerson was tried and convicted of resisting an officer without violence. (Doc. 1-1 at 6–7). The trial court sentenced her to ten days' imprisonment in the Orange County jail but suspended the sentence with the condition that she perform 100 hours of community service. (Doc. 1-1 at 8.)

Petitioner's next status conference in the 2017 criminal case occurred on March 13, 2018 (2017 Crim. Case Doc. 20.) The trial was continued after Ms. Dickerson explained that Petitioner may change his plea. (2017 Crim. Case Doc. 20). A subsequent change of plea hearing, however, was cancelled because Petitioner desired to proceed to trial. (2017 Crim. Case Docs. 25–27.)

The trial was set for a date certain of April 23, 2018. (2017 Crim. Case Doc. 24.) On that date, the parties appeared for trial, and Ms. Dickerson again moved to continue, citing late discovery provided by the United States. (2017 Crim. Case Docs. 35–36.) The motion was granted, and the trial date was set for May 29, 2018. (2017 Crim. Case Docs. 37–38.)

Trial began as scheduled. (2017 Crim. Case Doc. 43.) Ms. Dickerson was late to trial on the second day (2017 Crim. Case Doc. 43 at 1), but trial continued once she arrived. The case ended in mistrial when the jury could not reach a verdict. (2017 Crim. Case Doc. 50.)

The second trial began on June 19, 2018. (2017 Crim. Case Doc. 61.) Before trial, the Government argued that the defense had listed as witnesses an excessive number of officers from the Orlando Police Department,[3] and that most had nothing to do with the case. (2017 Crim. Case Doc. 81 at 6.) Ms. Dickerson

---

[3] The list included Officers Avignon and Thomas — the same officers that arrested Ms. Dickerson in October 2017. (2017 Crim. Case Doc. 60.)

explained that the officers assisted in the pertinent lockdown of the apartment complex and that she had narrowed down when each would need to be present, so they did not have to sit in the courthouse for three days. (2017 Crim. Case Doc. 81 at 7.) The Court warned that it would be an abuse of process to call every officer who checked in on the dispatch report. (2017 Crim. Case Doc. 81 at 8.) Ms. Dickerson later explained to the Court that she spoke with the witnesses and excused a number of them. (2017 Crim. Case Doc. 81 at 98–99.) Following a three-day trial, the jury could not reach a verdict. Therefore, Petitioner's second trial ended in mistrial. (2017 Crim. Case Doc. 70.)

On August 14, 2018, Ms. Dickerson failed to appear for a scheduled status conference in Petitioner's 2017 criminal case, and another attorney stood in for her to discuss setting the date for the third trial. (2017 Crim. Case Doc. 91.) The Court placed a call from the courtroom to find out why Ms. Dickerson was not present, and she explained she "thought this case was just reset for trial. [She] honestly did not see that it was set for a status." (2017 Crim. Case Doc. 158 at 5.) Trial was scheduled to begin on September 4, 2018. (2017 Crim. Case Doc. 94; Doc. 158 at 6.)

The third trial began as scheduled, although Ms. Dickerson arrived late. (2017 Crim. Case Doc. 99; Doc. 160 at 5.) At the beginning of trial, the Government again argued that the defense's lengthy witness list was an abuse of process, and Ms. Dickerson argued that all the listed officers had relevant information to the

case. (2017 Crim. Case Doc. 160 at 4–6.) The Government also notified the Court that Ms. Alexandra Charles remained on the defense witness list, even though she was under investigation for perjury based on her testimony at the prior two trials. (2017 Crim. Case Doc. 160 at 5.)

Later that day, Ms. Dickerson's assistant was escorted from the courthouse after being found using Ms. Dickerson's cellphone in the back of the courtroom, refusing to hand it over or provide her identification, attempting to forcefully enter the courtroom, and using profanity against the officer who forcibly prevented her from entering. (2017 Crim. Case Doc. 162 at 4–5.)

On the second day of trial, Ms. Dickerson was again late, and the Court fined her $100.00. (2017 Crim. Case Doc. 162 at 4.) Nonetheless, the trial continued through the second and third day. Ms. Dickerson ultimately did not call Ms. Charles as a witness, and Petitioner chose not to testify. (2017 Crim. Case Doc. 164 at 66, 98.) The jury found Petitioner guilty on both counts. (2017 Crim. Case Doc. 164 at 159–60.)

On September 7, 2018, Petitioner's 2009 criminal case (including the attendant revocation proceedings) was transferred to the undersigned so the two related cases could proceed together. (2009 Crim. Case Docs. 125–26.)

The Court then ordered Ms. Dickerson to appear in person, along with her assistant, and to show cause why sanctions should not be imposed for the

assistant's misconduct during the trial. (Doc. 1-2 at 2–3.) Ms. Dickerson did not appear for the hearing and did not pay the $100 fine that had been imposed for her tardiness. The Court referred the matter to the United States Attorney's office for prosecution for criminal contempt. *See United States v. Dickerson*, Case No. 6:18-cr-00215-RBD-DCI (M.D. Fla.).

By this time, the state court adjudicating Ms. Dickerson's criminal case for resisting an officer determined that she had failed to timely complete her mandatory term of community service. That court ordered her to spend eight days in jail. (Doc. 1-1 at 11); *State v. Dickerson*, 2017-MM-009328 (Fla. 9th Jud. Cir.).

In October 2018, the Court took judicial notice of the verdicts in the 2017 criminal case and ordered Petitioner to show cause why his term of supervised release in the 2009 criminal case should not be revoked. (2009 Crim. Case Docs. 132–33.)

In November 2018, a status conference was held in Ms. Dickerson's criminal contempt case. (Doc. 1-3 at 5–27; Case No. 6:18-cr-00215-RBD-DCI, Doc. 11.) At the end of the hearing, the Court dismissed the criminal contempt proceedings, but referred the matter to the grievance committee for the Middle District of Florida. (Case No. 6:18-cr-00215-RBD-DCI, Docs. 11, 12.)

On January 7, 2019, the Court conducted the sentencing hearing for Petitioner's 2017 criminal case and the supervised release revocation proceeding

for his 2009 criminal case. (2017 Crim. Case Docs. 122, 166.) For the convictions in the 2017 criminal case, Petitioner was sentenced to 210 months' imprisonment on Count One and a concurrent 120 months' imprisonment on Count Two, followed by three years' supervised release. (2017 Crim. Case Doc. 125.) As to the 2009 criminal case, the Court revoked Petitioner's supervised release and imposed a consecutive twenty-four-month term of imprisonment. (2009 Crim. Case Doc. 141.)

Petitioner timely appealed his conviction in the 2017 criminal case, and he was represented on appeal by counsel from the Office of the Federal Defender. (2017 Crim. Case Docs. 127, 133).

On February 15, 2019, the grievance committee recommended that the Court refer Ms. Dickerson to the Florida Bar, suspend her from practicing in the Middle District of Florida for twelve months, prohibit her from taking new cases in the Middle District until she is reinstated, and require her compliance with several conditions before being reinstated. (Doc. 1-3 at 28–39.) The Court later adopted the recommendations after Ms. Dickerson failed to respond to them. (Case No. 6:18-cr-00215-RBD-DCI, Doc. 18.)

After referral from the Court, the Florida Bar filed a complaint against Ms. Dickerson based on her conduct in Petitioner's case and other cases. The Florida Bar first suspended Ms. Dickerson from the practice of law for two years.

It then disbarred her from the practice of law in Florida for failing to comply with the requirements of the suspension order and Rule 3-5.1(h) of the Rules Regulating The Florida Bar and failing to respond to the attendant show cause order. (Docs. 7-1; 7-2; 7-3; 7-4.)

In the meantime, on March 19, 2020, the Eleventh Circuit affirmed Petitioner's convictions and sentences. *United States v. Rolle*, Nos. 19-10105, 19-10122, 806 F. App'x 729 (11th Cir. Mar. 19, 2020) (per curiam). Petitioner subsequently filed the present Motion to Vacate under 28 U.S.C. § 2255 (Doc. 1). As the Court can resolve the Motion to Vacate on the basis of the record, an evidentiary hearing is not warranted.[4]

## II. LEGAL STANDARD

Title 28 U.S.C. § 2255 provides federal prisoners with an avenue for relief under limited circumstances:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise

---

[4] "A petitioner is entitled to an evidentiary hearing if he alleges facts that, if true, would entitle him to relief." *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015) (citation and quotation omitted). The Court "is not required to grant a petitioner an evidentiary hearing if the § 2255 motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* at 877 (citation and quotation omitted).

> subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). If a court finds a claim under § 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.* at § 2255(b). To obtain this relief on collateral review, a petitioner must clear a significantly higher hurdle than exists on direct appeal. *See United States v. Frady*, 456 U.S. 152, 166 (1982) (rejecting the plain error standard as not sufficiently deferential to a final judgment).

### III. ANALYSIS

Petitioner raises two related claims for relief. In the first, Petitioner claims that "[t]he totality of the circumstances surrounding [his] trial counsel amount to structural error . . . and . . . *per se* ineffectiveness of counsel" under *United States v. Cronic*, 466 U.S. 648 (1984). In *Cronic*, the Supreme Court explained that, "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable" and no specific showing of prejudice is required. *Id.* at 659.

Petitioner raised this claim on direct appeal. The Eleventh Circuit rejected it, explaining that Petitioner did not satisfy either *Cronic* exception. As to the first

10

exception, under which " 'prejudice may be presumed where counsel is either entirely absent from, or was prevented from assisting the accused during, a critical stage of the trial,' " the Eleventh Circuit found that "Dickerson was present throughout every moment of the three trials, even if the proceedings were delayed at times due to her tardiness, and there is no suggestion that she was prevented from assisting [Petitioner] at any critical stage[.]" *Rolle*, 806 F. App'x at 736 (quoting *Castillo v. Fla., Sec'y of DOC*, 722 F.3d 1281, 1287 (11th Cir. 2013)). Further, "[w]hile she failed to appear for two status conferences, these absences had no discernible effect on the conduct of the trials." *Id.*

Regarding the second exception, the Eleventh Circuit explained that counsel did not " 'entirely fail to function as [Petitioner's] advocate by failing to meaningfully oppose the prosecution's case.' " *Id.* (quoting *Castillo*, 722 F.3d at 1287). Instead,

> [s]he did all the things lawyers normally do at trial, including engaging in jury selection and exercising peremptory challenges, presenting opening and closing arguments that advanced a coherent defense, lodging objections, conducting cross-examination, and calling witnesses. Her efforts led to two declared mistrials because the jury could not unanimously agree on a verdict. [She] also filed relevant objections to the PSR and presented argument at sentencing, and she represented [Petitioner] throughout the revocation proceedings.

*Id.* at 737.

The Eleventh Circuit acknowledged Ms. Dickerson's unprofessional conduct and personal criminal and disciplinary matters but found that those circumstances did not affect the fairness of Petitioner's criminal proceedings. Specifically, "the conduct for which she was sanctioned—arriving late and violating a standing order—has no discernible connection to 'the framework within which the trial proceeds.' " *Id.* (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)). Further, Petitioner did not "explain how Dickerson's own personal criminal or disciplinary matters affected the fairness of his criminal proceedings. All attorneys have responsibilities outside the courtroom that command their attention, and we cannot simply presume that Dickerson was so distracted by these personal matters that she was unable to discharge her duties" to Petitioner. *Id.*

The Eleventh Circuit also explained that, to the extent Petitioner claimed Ms. Dickerson had a conflict of interest related to certain officer witnesses, Petitioner "offer[ed] no indication that this conflict . . . adversely affected his counsel's performance in this case." *Id.* Finally, regarding Ms. Charles, the court determined that "the fact that [she] may have been investigated for perjury does not establish that Dickerson suborned perjury or committed any misconduct in relation to [her] testimony." *Id.*

"[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) (quoting *United States v. Natelli*, 553 F.2d 5, 7 (2d Cir. 1977)). Therefore, because the Eleventh Circuit decided this issue against Petitioner on direct appeal, the Court does not reconsider it, and the claim is denied.[5]

In the second claim, Petitioner argues that, even if he does not satisfy the standard required by *Cronic*, counsel was nonetheless constitutionally ineffective under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that, in order to prevail on a claim of ineffective assistance of counsel, a petitioner must establish that (1) "counsel's performance was deficient," meaning it "fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." 466 U.S. at 687-88. To satisfy the deficient-performance prong, a petitioner must show that counsel made

---

[5] Petitioner argues that he can avoid this outcome because "ineffective assistance of counsel may satisfy the cause exception to a procedural bar." (Doc. 10 at 2) (quoting *Nyhuis*, 211 F.3d at 1344)). His argument is not persuasive. Although the court in *Nyhuis* discussed the application of the cause and prejudice exception, the discussion occurred in connection with an issue that "was substantively different from the claim previously resolved" on direct appeal and that the Government conceded "may not have been litigated previously." *Nyhuis*, 211 F.3d at 1344. The Eleventh Circuit did not apply the cause and prejudice exception to the claim that was previously raised and resolved against the petitioner on direct appeal. *Id.* at 1343.

errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* at 687. A petitioner must rebut the strong presumption that his counsel's conduct fell within the range of reasonable professional assistance. *Id.* at 689.

Here, Petitioner does not demonstrate the requisite prejudice.[6] Petitioner claims that the Government introduced new evidence at the third trial that was not presented at the earlier trials — specifically, Petitioner's cellphone records, which the Government claimed placed him at the scene of the charged offense. (Doc. 1 at 34.) Petitioner asserts that he paid counsel for the cost of an expert to challenge the Government's interpretation of the cellphone records, but counsel did not present any such expert at trial. Petitioner believes that this additional evidence "tipped the scales in favor of conviction." (Doc. 10 at 4; *see also* Doc. 1 at 34.)

Petitioner concedes that he knew no expert was presented as part of his defense and that such a decision by counsel may have reasonable strategic justification. (Doc. 10 at 5.) Nonetheless, he claims that he did not know until after

---

[6] Because Petitioner does not demonstrate prejudice, the Court does not decide whether counsel's performance was deficient. *See Strickland*, 466 U.S. 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

the direct appeal that Ms. Dickerson never hired an expert to review the cellphone records. Petitioner claims that, had she done so and called the expert at trial, the expert's testimony would have supported the testimony of his alibi witness, Ms. Charles, who then would have testified consistent with her testimony in the first two trials. (Doc. 10 at 5).[7]

Petitioner's argument is not persuasive. Petitioner does not provide any detail about the anticipated testimony of such an expert. Instead, he merely speculates that the testimony of the expert would have contradicted the Government's position and supported his defense. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that vague, conclusory, or speculative allegations cannot support a claim of ineffective assistance of counsel).

Petitioner also faults counsel for her actions related to his alibi witness, Ms. Charles. He claims that, "[a]lthough the record reflects that Ms. Dickerson had known of the Government's perjury investigation for at least a week prior to the

_____

[7] Petitioner also contends that his argument regarding a cellphone records expert was not presented to the Eleventh Circuit on direct appeal. He argues that "it would be improper to deny review of [his] *Cronic* claim without reassessing the totality of the circumstances presented in the § 2255 motion," which includes the claim about failure to call a cellphone records expert. However, the fact that counsel did not call such an expert as a witness does not negate all of the other actions that counsel undertook as his advocate. Therefore, the argument does not affect the Eleventh Circuit's determination that Ms. Dickerson "subjected the government's case to meaningful adversarial testing," *Rolle*, 806 F. App'x at 737, notwithstanding her unprofessionalism and her personal criminal and disciplinary matters.

third trial, Ms. Charles was not notified of the issue until right before the trial was about to begin." (Doc. 1 at 34.) Petitioner asserts that, "[n]aturally, Ms. Charles was intimidated and did not have time to consider whether to seek her own counsel and challenge the Government's perjury investigation. Instead, [she] decided not to participate in the third trial." (Doc. 1 at 34).

"Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision [by counsel], and it is one [a reviewing court] will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995). *See also Buckelew v. United States*, 575 F.2d 515,521 (5th Cir. 1978) ("[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.").

As the Court determined when the issue was raised at trial, Ms. Charles was not prohibited from testifying. After learning she was under investigation, Ms. Charles could reasonably choose to testify in the third trial if she was telling the truth. (*See* Doc. 160 at 8.) Moreover, Petitioner states that Ms. Charles decided she did not want to testify on his behalf at the third trial. This change could reasonably imply to Ms. Dickerson that, if she was called as a defense witness against her wishes, her testimony would either (1) fail to support the defense or (2) constitute perjury. Ms. Dickerson's choice not to call Ms. Charles as a witness

under these circumstances was reasonable. *See White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992) ("The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial.").

Consequently, Petitioner has not demonstrated the ineffective assistance of counsel, and this claim is denied.

## IV.    CONCLUSION

Therefore, it is **ORDERED** and **ADJUDGED** as follows:

1. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Doc. 1) is **DENIED**, and this case is **DISMISSED** with prejudice.

2. The Clerk of Court shall enter judgment accordingly and is directed to close this case.

3. The Clerk of Court is directed to file a copy of this Order in Criminal Case No. 6:09-cr-103-GAP-RMN and to terminate the Motion (2009 Crim. Case Doc. 164) pending in that case.

4. The Clerk of Court is directed to file a copy of this Order in Criminal Case No. 6:17-cr-301-GAP-GJK and to terminate the Motion (2017 Crim. Case Doc. 176) pending in that case.

5. This Court should grant an application for certificate of appealability

only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to make a substantial showing of the denial of a constitutional right.[8]

Accordingly, a Certificate of Appealability is **DENIED** in this case.

**DONE** and **ORDERED** in Orlando, Florida on May 3rd , 2023.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record

---

[8] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *Rules Governing Section 2255 Proceedings for the United States District Courts*, Rule 11(a).